IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-1461-RBJ-CBS

ERIC WEBB,

    Plaintiff,

v.

STERLING CORRECTIONAL OFFICER DELANEY,
STERLING CORRECTIONAL OFFICER WALRAVEN,

    Defendants.

## ORDER

This matter is before the Court on defendants' Motions for Summary Judgment [ECF Nos. 66 and 67] and defendant Delaney's Motion to Strike Plaintiff's Expert Witnesses and Motion in Limine [ECF Nos. 80 and 87]. The motions are ripe for review.

## I.  FACTS

Plaintiff Eric Webb is a prisoner in the custody of the Colorado Department of Corrections. ECF No. 1 at ¶ 1. He was incarcerated at the Sterling Correctional Facility in Sterling, Colorado at all times relevant to this dispute. *Id.* at ¶ 24. This case arises out of two incidents. The first incident took place on June 18, 2012. ECF No. 72-1 at 27:2–20. Webb jokingly wore his oversized orange pants in a way that resembled a dress. *Id.* Other inmates started to laugh, and as a result, defendant Correctional Officer Christopher Delaney ordered

Webb to "cuff up." *Id.* at 27:19–28:11. Webb turned around and placed his hands behind his back. *Id.* at 28:12–19. Webb claims that Delaney intentionally handcuffed him too tightly and twisted his wrists in a manner in which Delaney knew would injure his right arm. *Id.* at 28:16–30:7, 70:1–4. Following his encounter with Delaney, Webb was placed in segregation for the night. He complained to the guards repeatedly because his right wrist "hurt the whole time" and "was swelling." *Id.* at 43:2–25. The following day Webb was transferred to the emergency room at Sterling Regional Medcenter. ECF No. 72-3. Medical staff noted that Webb's arm was swollen and bruised with "impending compartment syndrome." *Id.* The emergency room doctor, Dr. Fenton, performed a fasciotomy of Webb's right hand and forearm. *Id.*

The second incident occurred on September 18, 2012. ECF No. 73-1 at 86:11–12. Because Webb was "acting out," defendant Correctional Officer John Walraven ordered Webb to "turn around" and "cuff up." *Id.* at 88:8–11; ECF No. 73-5. In anticipation of being handcuffed, Webb warned Walraven that his right arm was injured. ECF No. 73-1 at 88:12–13. When Walraven allegedly tried to "slap" the handcuff on Webb's left arm, Webb turned around and brought his arm back as if he intended to punch Walraven. *Id.* at 89:1–10. Several staff members ran over to help Officer Walraven. ECF No. 73-1 at 89:12–14, 91:18–21. They were able to push Webb up against a wall and handcuff him. ECF No. 66-2 (original surveillance video). The following day Webb was transported to the emergency room at Sterling Memorial Medcenter to receive treatment for pain and swelling of his right wrist. ECF No. 73-5.

On May 23, 2014 Webb filed a Complaint pursuant to 42 U.S.C. § 1983 arguing that defendants violated his Eighth Amendment rights. ECF No. 1 at ¶¶ 52–57. The Court subsequently granted the parties' joint motion to dismiss ten named and two unnamed

defendants. ECF No. 62. Additionally, the Court granted in part defendants' motion to dismiss, dismissing Webb's claims against all but two defendants. ECF No. 63. Delaney and Walraven are the remaining defendants in this case. *Id.* at 12. Webb retains his excessive force claim against Delaney and Walraven and his deliberate indifference claim against Delaney. *Id.* Delaney and Walraven now move for summary judgment. ECF Nos. 66, 67. Delaney also moves to strike Webb's expert witnesses for untimely and insufficient disclosure. ECF No. 80. Furthermore, Delaney moves to exclude evidence relating to Webb's 2013 injuries that were caused by incidents at other facilities and Webb's deliberate indifference claim. ECF No. 87. The Court will address each motion in turn.

## II.    SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### III.     QUALIFIED IMMUNITY

The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012) (internal quotations and citations omitted). When the defendant asserts a qualified immunity "defense," the summary judgment standard is subject to a "somewhat different analysis from other summary judgment rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).

By asserting the doctrine of qualified immunity, a defendant "trigger[s] a well-settled twofold burden" that the plaintiff is "compelled to shoulder." *Cox v. Glanz,* 800 F.3d 1231, 1245 (10th Cir. 2015). The burden shifts to the plaintiff to show (1) "that the defendant's actions violated a specific statutory or constitutional right," and (2) that the right was "clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221. Courts have discretion to address either prong of this standard first. *Cox*, 800 F.3d at 1246. "In determining whether a plaintiff has carried its two-part burden . . . ordinarily courts must adopt plaintiff's version of the facts." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1325 (10th Cir. 2009) (Holmes, J., concurring) (internal quotations and citations omitted). However, "plaintiff's version of the facts must find support in the record[.]" *Id.*

"It is only *after* plaintiff crosses the legal hurdle comprised of his or her two-part burden of demonstrating the violation of a constitutional right that was clearly established, that courts should be concerned with the *true* factual landscape[.]" *Id.* (emphasis in original). Considering the true factual landscape, "courts should determine whether defendant can carry the traditional

summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law." *Id.* at 1326.

## IV.   ANALYSIS

### A. Delaney's Motion for Summary Judgment [ECF No. 67]

Webb claims that Delaney used excessive force against him and was deliberately indifferent to his serious medical needs. ECF No. 1 at ¶¶ 54, 55. Delaney contends that summary judgment is appropriate because, as a matter of law, Webb cannot (1) establish that Delaney used excessive force or was deliberately indifferent to his medical needs; (2) prove that Delaney's conduct caused his injury; or (3) carry his burden to overcome Delaney's assertion of qualified immunity. ECF No. 67. For the reasons discussed below, Delaney's motion for summary judgment is granted in part and denied in part.

#### 1. Deliberate Indifference

In Webb's response to Delaney's motion for summary judgment he fails to respond to any of Delaney's arguments with respect to the deliberate indifference claim. *See* ECF No. 72. He has failed to "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Therefore, Delaney is entitled to summary judgment as to this claim.

#### 2. Excessive Force

Delaney argues that summary judgment is appropriate because Webb cannot establish a prima facie case of excessive force. ECF No. 67 at 7. I disagree.

In the Eighth Amendment context, "an excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the

officials acted with a sufficiently culpable state of mind." *Marshall v. Milyard*, 415 F. App'x 850, 852 (10th Cir. 2011) (quoting *Smith v. Cochran,* 339 F.3d 1205, 1212 (10th Cir. 2003)). The objective component "is contextual and responsive to contemporary standards of decency." *Smith*, 339 F.3d at 1212 (internal quotations and citations omitted). The subjective component "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* However, the "core judicial inquiry" is the latter because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 7–9 (1992).

    Here, viewing the facts in the light most favorable to the plaintiff, the Court finds that Webb puts forth sufficient evidence from which a reasonable jury could conclude that Delaney violated his Eighth Amendment right to be free from excessive force. According to Webb, on the night in question, he put both of his legs through one pant leg of his oversized orange pants, in a manner that resembled a dress. ECF No. 72-1 at 27:2–20. The other inmates laughed at his joke, and Delaney responded by ordering Webb to "cuff up." *Id.* at 27:19–28:11. Webb complied by turning around and placing his hands behind his back. *Id.* at 28:12–19. He then asked, "What for?" *Id.* at 30:17–21. Delaney twisted Webb's left arm and roughly cuffed his left wrist. *Id.* at 28:16–19. Webb commented, "Is that all you got?" accompanied by a profanity, which caused Delaney to "purposefully" clamp the second handcuff even tighter on Webb's right wrist. *Id.* at 28:16–30:7, 70:1–4. Webb could immediately sense that something wasn't right with his right arm. *Id.* at 29:1–9. However, he did not inform any of the officers because he was

"afraid that just showing any kind of vulnerability would just cause [him] . . . more pain." *Id.* at 37:20–25.

Delaney was trained not to handcuff inmates too tightly because unduly tight handcuffs can cause injury. ECF No. 72-2 at 7–8. Oftentimes, Delaney would place a finger between the cuff and the inmate's wrist to make sure the handcuffs were not too tight. *Id.* at 8; ECF No. 67-2 at ¶ 5. However, when Delaney handcuffed Webb, the cuffs were so tight that Delaney could not have put his finger between the cuff and Webb's wrist. ECF No. 72-6.

Eventually Webb was placed in segregation for the night. He complained to the guards repeatedly because his right wrist "hurt the whole time" and "was swelling." ECF No. 72-1 at 43:2–5. He "knew something was wrong." *Id.* at 43:7. The next morning Webb was transferred to the emergency room. ECF No. 72–3. He underwent an emergent fasciotomy of his right hand and forearm to address the contusions, swelling, and impending compartment syndrome. *Id.*

Delaney cites to *Stanton v. Furlong* in support of his argument that Webb's allegations fail to establish a prima facie case of excessive force. 73 F. App'x 332 (10th Cir. 2003); ECF No. 67 at 8. I find *Stanton* distinguishable from the case at hand. In *Stanton*, the inmate was handcuffed because he verbally threatened an officer. 73 F. App'x at 334. After the inmate complained that the right handcuff was too tight, another officer loosened it and realized that the handcuff was improperly applied. *Id.* Medical personnel subsequently examined the inmate, and they noted two abrasions and slight edema consistent with the normal use of handcuffs. *Id.* The district court held that the officer had not used excessive force in handcuffing the inmate. *Id.* The Tenth Circuit affirmed the district court's judgment and found no error in the district court's consideration of the following facts:

7

> Noting the evident security purpose for [the officer's] use of the handcuffs, the length of time during which the handcuffed [inmate] voiced no discomfort while speaking with the shift commander, and the relatively minor indicia of trauma ultimately found on medical examination, the district court concluded that [the officer] did not handcuff [the inmate] maliciously to inflict pain or cause harm but reasonably to maintain order while the appropriate institutional response to [the inmate's] threatening behavior was decided upon.

*Id.*

In contrast, Webb has put forth evidence that (1) there was no apparent security threat when Delaney ordered him to "cuff up;" (2) Delaney purposefully clamped the handcuff too tightly on his right wrist after Webb commented about the tightness of the handcuff on his left wrist; (3) Webb did not inform the officers about the tight handcuff because he was afraid they would hurt him more; and (4) the unduly tight handcuff caused such extensive injuries that Webb had to be rushed into surgery the following morning. Therefore, the circumstances in the present case are materially different from those in *Stanton.*

In sum, Webb's allegations—that in the absence of a security threat Delaney intentionally handcuffed Webb's right wrist so tightly that it caused compartment syndrome requiring emergency surgery—are sufficient to satisfy both the objective and subjective prongs of the excessive force inquiry. *See Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."). For the above reasons, Delaney is not entitled to summary judgment on this issue.

### 3. Causation and Injury

Delaney argues that, without expert testimony, Webb cannot prove that Delaney's conduct caused him injury. ECF No. 67 at 12. The Court finds that a reasonable juror, with or

without expert testimony, could conclude that Delaney, by applying the right handcuff too tightly, caused the swelling in Webb's hand and forearm requiring surgery.

Delaney asserts that "[w]hether handcuffing and restraint procedures are medically capable of causing the specific injuries that Webb complains of is not a question understood by a layperson," but "is the type of medical causation question issue that requires expert testimony." ECF No. 67 at 15. In support of this argument he points to *Franklin v. Shelton*, 250 F.2d 92 (10th Cir. 1957) and *Mathison v. United States*, No. 13-CV-00110-PAB-NYW, 2015 WL 854476 (D. Colo. 2015). I find that *Franklin* and *Mathison* are distinguishable from the case at hand. In both *Franklin* and *Mathison* the plaintiff tried to establish a causal relationship between the defendant's conduct and the plaintiff's injury without expert testimony despite the fact that the "injuries complained of [were] of such character as to require skilled and professional persons to determine the cause and extent thereof." *Franklin,* 250 F.2d at 97–98 (plaintiff testified that a car accident caused her vision and menstrual issues); *Mathison*, 2015 WL 854476 at *3 (prisoner submitted sworn declarations stating that his hearing loss was temporally connected to an increase in volume of the prison's PA system). In both cases the connection between the defendant's conduct and the plaintiff's injury was tenuous—such that a layperson would be required to make a series of inferential leaps to find causation.

Here, a layperson could understand from Webb's evidence that Delaney, in applying the right handcuff too tightly, caused Webb's wrist to swell to the point of requiring emergency surgery. Webb claims that Delaney purposefully clamped the handcuff tightly on his right wrist. ECF No. 72-1 at 28:16–30:7, 70:1–3. He could immediately sense that something wasn't right with his right arm. *Id.* at 29:1–9. After stopping briefly at the commander's office, officers

escorted Webb to medical for an anatomical. *Id.* at 38–39:1. At that point, Webb felt like his wrist was "messed up." *Id.* at 40:25. The nurse noted on the Anatomical Form that Webb "appear[ed] to have impressions from wrist restraints" on his right wrist. ECF No. 72-5. After the nurse finished her examination, officers placed Webb in segregation. ECF No. 71-2 at 41:10. Throughout the night, Webb repeatedly requested to see a nurse or doctor. *Id.* at 43:6–25. His right wrist "was swelling" and he "knew something was wrong." *Id.* at 43:2–7. Webb finally saw a nurse around 6:00 a.m., and she transferred him to medical within thirty minutes. *Id.* at 46. Webb was then taken to the emergency room. ECF No. 72-3. Medical personnel examined his right arm noting "contusions and swelling plus restraint compression with impending compartment syndrome." *Id.* at 67:2–25; ECF No. 72-3. The "marked swelling . . . was treated with emergent fasciotomies" of his right hand and forearm. *Id.*

Altogether, this evidence is sufficient to establish a causal relationship between Delaney's conduct and Webb's injury to create a dispute of material fact. Jurors are good at assessing credibility. If the jury assesses Webb's testimony as credible, not only as to the cuffing but his contemporaneous sensation of pain, couple that with the fact that surgery on the affected area was performed the next day, and couple those facts with the absence of any credible alternative explanation of the injuries, it is capable of inferring cause and effect without the assistance of expert testimony. Therefore, the Court finds that this issue is appropriate for a jury's determination.

### 4. Qualified Immunity

Finally, Delaney asserts the doctrine of qualified immunity. ECF No. 67 at 15. While Webb's effort to overcome qualified immunity is inartful in form, the substance of his response is sufficient. ECF No. 72. For the reasons discussed below, the Court finds that Webb's version of the facts, insofar as it finds support in the record, demonstrates that Delaney's use of force violated clearly established Eighth Amendment law.

The first inquiry in the qualified immunity analysis is whether plaintiff's allegations demonstrate that Delaney violated Webb's constitutional right. *Steffey*, 461 F.3d at 1221. As discussed in Sections IV.A.2 and 3, Webb has put forth sufficient evidence from which a reasonable juror could conclude that he was a victim of excessive force.

The second inquiry is whether Delaney's conduct violated clearly established Eighth Amendment law. *Steffey*, 461 F.3d at 1221. I find that it did. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). A clearly established right must be sufficiently clear "that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotations and citations omitted). Existing precedent must have placed the constitutional question "beyond debate." *Id.* "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

It has long been clearly established that the unnecessary and wanton infliction of pain in the course of a prison security measure violates the Eighth Amendment prohibition on cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986). Every reasonable official would understand that unnecessarily and intentionally tightening an inmate's handcuffs so as to cause the inmate extensive pain and serious injury violates the inmate's Eighth Amendment right to be free from excessive force. *See Stanton*, 73 F. App'x at 334 (handcuffing did not violate inmate's Eighth Amendment right where defendant "did not handcuff [inmate] maliciously to inflict pain or cause harm but reasonably to maintain order while the appropriate institutional response to [inmate's] threatening behavior was decided upon"); *see also Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (unduly tight handcuffing can constitute excessive force in the Fourth Amendment context "where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight").

Because Webb has satisfied his two-part burden to overcome Delaney's assertion of qualified immunity, the Court turns from Webb's factual landscape to "the *true* factual landscape." *Thomson,* 584 F.3d at 1326 (Holmes, J., concurring) (emphasis in original). "Based upon that true factual landscape, courts should determine whether defendant can carry the traditional summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law." *Id.* Here, the parties genuinely dispute many material facts that implicate the Eighth Amendment excessive force analysis including, but not limited to, whether (1) Webb created a disturbance and potential security threat; (2) Delaney intentionally tightened Webb's handcuffs; and (3) Delaney's conduct

12

caused Webb's injuries. Therefore, these fact disputes render summary disposition inappropriate.

### B. Walraven's Motion for Summary Judgment [ECF No. 66]

Walraven asserts that he is entitled to summary judgment on qualified immunity grounds. ECF No. 66. As stated above, because Walraven asserts qualified immunity, the burden shifts to Webb to show "that the defendant's actions violated a specific statutory or constitutional right." *Steffey*, 461 F.3d at 1221. The requisite legal standards for an Eighth Amendment excessive force claim have been laid out in Section IV.A.2. Accepting Webb's version of the facts as true, the Court finds that Webb has not put forth sufficient evidence from which a reasonable juror could conclude that Walraven violated his constitutional right. Because the Court finds that Webb has failed to carry the first part of his two-part burden, Walraven is entitled to qualified immunity.

Webb claims that he had a confrontation with Officer Walraven on September 18, 2012. ECF No. 73-1 at 85:17–87:21. Webb was working in the kitchen that night and was in the middle of a conversation with Sergeant Leonard when Walraven walked up to speak to them. *Id.* Walraven told Webb to get back to work. *Id.* at 88:3–4. Webb responded, "Screw you," and as a result, Walraven ordered him to "turn around" and "cuff up." *Id.* at 88:5–11.

Webb instructed Officer Walraven to be careful with his right arm and turned around to cuff up, but instead of offering both arms behind his back, Webb placed his left arm behind his back and his right arm over his head. *Id.* at 88:12–16. When Walraven tried to "slap" the handcuff on Webb's left (uninjured) arm, Webb "turned around on him" and "almost decked him." *Id.* at 89:1–10. Webb states that he "actually took a step towards Walraven with [his] arm

13

cocked," and that he "was going to punch him." *Id.* at 90:23–91:2. A video of the incident confirms that Webb initially turned around to cuff up, but when Walraven tried to put a handcuff on Webb's left wrist, Webb turned back around to face Walraven. ECF No. 66-2.

Several staff members ran over to help Walraven. ECF No. 73-1 at 89:12–14, 91:18–4. They were able to push Webb up against a wall and handcuff him. ECF No. 66-2. From watching the surveillance video it is unclear who handcuffed Webb. ECF No. 66-2. Webb does not put forth any evidence suggesting that it was Walraven who handcuffed his right arm. In fact, Sergeant Leonard's testimony implied that a first responder, Officer Martinez, put the handcuffs on Webb. ECF No. 73-2 at 30:3–25..

Webb was subsequently escorted to medical for an anatomical examination. ECF No. 73-4. The nurse noted moderate swelling to his right arm and hand. *Id.* The following day he was taken to the emergency room. ECF No. 73-5. The emergency room doctor, Dr. Diilio, noted a "crush injury" to Webb's right wrist with moderate swelling. *Id.*

From these facts a reasonable juror could not conclude that Officer Walraven violated Webb's right to be free from excessive force. Walraven reasonably perceived a threat from Webb when he thought Webb might hit him and he responded with a minimal use of force. Considering Webb's factual allegations and the video of the incident, it is clear that Walraven pushed Webb up against the wall, but it is not clear who handcuffed him. The extent of Webb's injury, from the anatomical and emergency room notes, appears to be moderate swelling of his right arm and hand. In sum, I find that plaintiff has not come forward with evidence that creates a genuine dispute about Walraven's position that he used force in a good faith effort to maintain

and restore discipline and not to maliciously and sadistically cause harm.[1] Thus, even assuming the truth of Webb's allegations of fact, they fall short of establishing that Walraven's actions violated his constitutional right. Therefore, Walraven is entitled to qualified immunity.

C. **Motion to Strike Plaintiff's Expert Witnesses [ECF No. 80]**

Delaney moves to strike Webb's expert witnesses for failure to timely and sufficiently disclose the witnesses and their opinions as required by Fed. R. Civ. P. 26(a)(2). ECF No. 80. The expert disclosure deadline in this case was July 1, 2015. *Id.* at ¶ 5; ECF No. 34. Delaney, through previous counsel, timely served his expert witness disclosures. ECF No. 80 at ¶ 6. Delaney's current counsel entered their appearances on July 29, 2015. *Id.* at ¶ 7. They received the previous counsel's file which did not contain any expert witness disclosures from the plaintiff. *Id.* Delaney's counsel inquired repeatedly of plaintiff's counsel as to whether he intended to disclose any experts. *Id.* at ¶¶ 8, 11. They received no response. *Id.*

On October 27, 2015 the parties filed the proposed pretrial order, in which plaintiff listed five expert witnesses: (1) Darrel T. Fenton, D.O.; (2) Raffi Gurunluoglu, M.D.; (3) Richard P. Diilio, M.D.; (4) Ken David Danylchuk, M.D.; and (5) Angela Stevens. ECF No. 71 at 9. On November 2, 2015 plaintiff filed his response to Delaney's motion for summary judgment, which included as an exhibit a copy of plaintiff's initial and expert disclosures with service dates by email of October 29, 2014 and July 2, 2015 respectively. ECF Nos. 72-4; 80 at ¶ 12. According to Delaney, both disclosures listed the incorrect email address for Delaney's previous counsel. ECF No. 72-4; ECF No. 80 at ¶ 12. The expert disclosure lists three treating physicians as non-

---

[1] Webb also argues that "Walraven's refusal to believe that Plaintiff's right wrist was injured and his failure to investigate whether it was injured constitutes deliberate indifference to a serious medical issue." ECF No. 73 at 4. Webb's argument is misplaced because his complaint pleads a deliberate indifference claim against Delaney, but not Walraven. ECF No. 1 at ¶¶ 54, 55.

retained experts: (1) Dr. Fenton; (2) Dr. Diilio; and (3) Dr. Danylchuk. ECF No. 72-4. Each disclosure consists of two to three sentences generally describing the doctor's connection to the case. *Id.* Finally, on November 13, 2015, the parties filed an amended pretrial order, in which plaintiff moved his "expert witnesses" to the "fact witnesses" category. ECF No. 76.

Delaney moves for an order pursuant to Fed. R. Civ. P. 37(c) striking plaintiff's expert witnesses, including Dr. Fenton, Dr. Diilio, Dr. Danylchuk, Dr. Gurunluoglu, and Angela Stevens. ECF No. 80. Webb responds, through counsel, recognizing that "the procedural picture is not a pretty one," but insisting that all of the witnesses listed by plaintiff in the pretrial order were made known to defendants during the discovery process or in writing. ECF No. 84 at 3. The trial has since been continued and reset for May 9, 2016. ECF No. 93.

Federal Rule of Civil Procedure 26(a)(2)(D) requires expert disclosures to be made "at the times and in the sequence that the court orders." Further, an expert disclosure must state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)–(ii). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to or instead of preventing the party from supplying the evidence at trial, courts may impose a variety of other sanctions. *Id.* at (c)(1)(A)–(C).

Based on the Court's rulings in this Order and plaintiff's limited disclosures, it appears that plaintiff may no longer need to call Dr. Diilio or Dr. Danylchuk as expert witnesses at trial.

*See* ECF No. 72-4 at 1 (plaintiff intends to call Dr. Diilio to testify about injuries following incident with Walraven); *Id.* at 1–2 (plaintiff intends to call Dr. Danylchuk to testify about continuing problems with Webb's right arm in 2013). In any event, the Court finds that plaintiff's disclosure of his experts was untimely and insufficient. Giving plaintiff's counsel the benefit of the doubt, the Court will assume that counsel did attempt to email the document entitled "Initial Disclosure of Expert Witnesses" to defense counsel on July 2, 2015 as the Certificate of Service indicates. If the document was not delivered due to the incorrect email address or for some other reason, I will assume that this was a good faith mistake. Even so, however, the disclosure does not fully comply with the disclosure requirement for non-retained experts found in Rule 26(a)(2)(C).

I find, as to Dr. Fenton, who is a treating physician to whom the plaintiff was taken for diagnosis and treatment for the injuries allegedly caused by defendant Delaney, that the facts of his diagnosis and treatment are sufficiently, if minimally, disclosed in the document (and the medical records to which the defendant presumably has had access), that he can testify essentially as a fact witness to that extent. However, he cannot express an opinion concerning causation other than as is necessary to explain diagnosis and treatment. For example, if it is medically necessary in explaining his diagnosis and treatment to say that the injury was caused by twisting, pinching, etc., then that is permitted. It would not be appropriate to opine that the specific cause was excessively tightened handcuffs. He may not express opinions concerning prognosis or the need for future treatment unless those opinions are clearly stated in the contemporaneous medical records. The plaintiff may not call Dr. Gurunluoglu or Ms. Stevens to express any expert opinions, because they were not timely or sufficiently disclosed as experts in

17

any sense. Therefore, Delaney's motion to strike Webb's expert witnesses is granted in part and denied in part.

### D. Motion in Limine [ECF No. 87]

On December 15, 2015 Delaney filed a Motion in Limine asking the Court to exclude evidence of (1) Webb's 2013 injuries that were caused by incidents at facilities other than the Sterling Correctional Facility; and (2) Delaney's alleged deliberate indifference to Webb's medical needs. ECF No. 87. Plaintiff has not responded to this motion. Delaney's motion is granted in part and moot in part.

First, evidence of events that took place in 2013 at facilities other than the Sterling Correctional Facility will not be admitted. At all times relevant to this dispute Delaney worked at the Sterling Correctional Facility. Furthermore, Webb does not allege that Delaney participated in the 2013 events. The admission of such evidence would be prejudicial to Delaney and would waste the jury's time. Therefore, pursuant to Fed. R. Evid. 403, it is excluded. Second, as decided above, Delaney is entitled to summary judgment on Webb's deliberate indifference claim, rendering Delaney's request to exclude evidence of deliberate indifference moot.

## V.   ORDER

Defendant Delaney's Motion for Summary Judgment [ECF No. 67] is GRANTED IN PART and DENIED IN PART. Defendant Walraven's Motion for Summary Judgment [ECF No. 66] is GRANTED. Delaney's Motion to Strike Plaintiff's Expert Witnesses [ECF No. 80] is GRANTED IN PART AND DENIED IN PART. Finally, Delaney's Motion in Limine [ECF No. 87] is GRANTED IN PART and MOOT IN PART.

DATED this 11th day of March, 2016.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

19